Laramore, Judge,
delivered the opinion of the court:
In this action plaintiff, the widow of Colonel Altman, who died March 19, 1962, seeks in lieu of retirement pay-based on age and length of service, disability retired pay commencing July 1, 1955. The petition was originally filed by Colonel Altman, and his widow, Florence, Altman, was *314 subsequently substituted as party plaintiff. For convenience, the opinion will refer to Colonel Altman as plaintiff.
The claim for entitlement to be retired for disability, as set forth in the petition, is based upon the allegation that sometime prior to June 30, 1955, plaintiff became permanently incapacitated from performing any duties of an Army officer of his grade and that the cause of such incapacity was hypertension, arteriosclerosis, and cardiovascular disease incurred in line of duty.
There is no dispute as to the facts as shown by joint exhibits stipulated for admission into evidence, and in pertinent part they are as follows:
Plaintiff had served approximately 17years on active duty in the Army when, on June 30, 1955, he was relieved from active duty by reason of reaching age 60 with at least 20 years of satisfactory Federal service. From July 1, 1955, until his death on March 19, 1962, plaintiff received retired pay under the provisions of Title III, Public Law 810, 80th Congress.
The medical service records of plaintiff describe the relevant facts as follows: The electrocardiogram taken April 4, 1955, in contemplation of plaintiff’s separation by reason of age, was reported as “Within Normal Limits.” The foregoing evaluation was reported on Standard Form 520 to which were attached the tracings of the EKG.
Plaintiff’s final-type physical examination for separation was conducted May 6, 1955. The Report of Medical Examination, recorded on Standard Form 88, reflects medical findings of blood pressure measurements of 159/96 sitting, 158/92 recumbent, and 160/96 standing. The examining physician noted that plaintiff’s heart was not enlarged, that “A2” was slightly accentuated, and that “CTR. is 13.6/31.5. There is some elongation of the aorta” and that the examinee was qualified for retirement with a Profile of 1111 3 1 and a Physical Category of “C”.
The Report of Medical History, recorded on Standard Form 89, dated May 6, 1955, reflects that plaintiff told the examining physician, Dr. Jacob Behr Shapiro, that he had not had and did not have shortness of breath, pain or pressure *315 in the chest, palpitation or pounding heart, or high or low blood pressure. Plaintiff also denied other ailments listed on the form, except scarlet fever, whooping cough, and eye trouble.
On May 3,1955, Dr. Shapiro had directed a request to the Heart Station, Valley Forge Army Hospital, for a cardiac consultation relating to plaintiff, stating that an EKG and ' chest plate accompanies the patient.
The cardiac consultation was undertaken, and reported by Captain Edward Hale, M. C., on Standard Form 513, dated May 9,1955, in these words:
* * * Patient had generally been asymptomatic, however, he has noted easy fatigue and mild dyspnea on exertion for several years. Patient feels drowsy in the mid-day and particularly at night. Patient is on a low degree of activity and experiences discomfort “tired” feelings after spading the garden for 45 minutes. He has occasional twinges of left apical and left arm discomfort but no real angina. These symptoms come on regardless of activity. He denies cyanosis, paraxysmal nocturnal dyspnea, edema or previous heart disease. His previous blood pressure has been 110-130 mins systolic. However, during the past year his blood pressure has been recorded as 150-180 mms systolic upon occasion. He feels he has a good deal of nervous energy but also drowsy at times. His weight has steadily been gaining to a peak of 181 lbs. at the present time. He eats two light meals and one heavy evening meal.
Physical Examination: Blood pressure 134/90 with small cuff, 130-120/80-86 with the large cuff. The patient is active, alert and obviously obese, mostly in the chest and abdominal areas. Heart tones are good, no murmurs heard, PMI is not palpable. There is slight questionable enlargement to the left. The lungs fields are dear. The abdomen is soft and obese. Extremities — several prominent anterior tibial veins. There are small lipomas simulating varicose venous pools of the lower extremities. Posterior tibial arteries are quite palpable. Fundu-scopic examination is normal. Fluoroscopic examination reveals a normal size heart and configuration to all chambers. Barium swallow is normal. Aortic knob is prominent without calcification. There is no uncoiling of the arota [sic]. X-ray conforms above findings, how *316 ever, it reveals a slight more prominence of the left ventricle probably due to incomplete deep inspiration. EKG is normal one week ago and at the present time.

Diagnostic Impression:

1. No clinical cardiovascular disease.
2. Obesity, simple, exogenous.

Therapy:

1. A thousand calorie diet low in fat content.
2. [Regulative exercise.
3. Patient is qualified for longevity separation.
Prior to June 30,1955, the effective date of plaintiff’s separation, his service medical records, as reflected by the foregoing Standard Forms 520, 88, 89 and 513, were forwarded by the Adjutant General to the Surgeon General for review for the purpose of determining plaintiff’s physical qualification for separation. On 'May 27,1955, the Surgeon General found plaintiff physically qualified for separation by reason of age.
On August 19,1957, following plaintiff’s application to the Army Board for Correction of Military [Records for retirement for disability, the Correction Board forwarded plaintiff’s medical records to the 'Surgeon General, together with plaintiff’s application and attachments, for comment and opinion. The Adjutant General asked for detailed comment and opinion as to whether the evidence of record is sufficient to have warranted plaintiff’s retirement on June 30,1955, by reason of physical disability, under the laws, rules, regulations and policies in effect at that time. The Surgeon General’s response, dated September 11,1957, was as follow's:
1. Records in the case of Julius Altman, 0-166805, have been carefully reviewed in this office.
2. Report of physical examination performed at time of retirement, including a careful cardiac consultation, indicates clearly that applicant’s physical condition at that time was such as to qualify him for further military service under the standards current at that time. It is pointed out that blood pressure measurements were performed at least six (6) times during the examination, as well as funduscopic and electrocardiographic evaluations and all were found to be well within normal limits.
3. It is the opinion of this office that the record fails to indicate evidence which would have warranted separa *317 tion on a medical basis under the laws, rules, regulations, and policies in effect at that time.
Under these facts the court is called upon to determine whether the action of the Army Board for Correction of Military Records, which denied plaintiff’s application and request for consideration thereof, and the Army’s failure to retire him for physical disability, was contrary to statute, unsupported by the evidence, and was arbitrary, capricious and illegal.
A.R. 40-504, entitled “Standards of Fitness and Unfitness for Retention on Active Duty,” 28 June 1955, reads in pertinent part as follows:
Par. 38. Hypertension and hypertensive cardiovascular disease.

(a). Definitions

(1) Early or mild. A variable blood pressure of 150 •to 180/100 to 110, occasionally elevated above these limits under stress, but almost always falling to near normal (140/90) with rest or sedatives. No change or minimal changes in fundi narrowing of arterioles); minimal or no changes in the heart or kidneys.
ifi # ¿fi &
(b). Standard. In general, individuals with early or mild hypertension should not be found unfit. However, if an individual has blood pressure that is frequently elevated to 200/120 or more (which may return to normal limits with rest and sedatives), and even though abnormal renal, cardiac, cerebral, retinal, or other findings are not present, the individual may occasionally be considered unfit * * *.
In order to qualify for retirement under section 402(b) of the Career Compensation Act of 1949, 63 Stat. 802, the member must be unfit to perform the duties of his office and such disability must be 30 per centum or more in accordance with the Standard Schedule of Rating Disabilities in current use by the Veterans Administration. The Veterans Administration Schedule provides that such member, to be eligible for retirement, must have hypertensive cardiovascular disease.
The report of medical examination for separation recited earlier, clearly shows that at most plaintiff had early or mild *318 hypertension, at the time of his separation, which under applicable Army medical standards did not constitute physical unfitness to perform the duties of his office. A.E. 40-504, paragraph 38, supra.
Plaintiff’s other claim for physical disability retirement is based on an alleged arteriosclerotic heart disease, which is defined in the Veterans Administration Schedule as follows:
4. Arteriosclerotic Heart Disease. — Arteriosclerotic heart disease is a disease of the heart due to diminution of blood supply to the heart muscle on account of ar-teriosclerotic narrowing of the lumen of one or both coronary arteries. Any sudden development, during service, of coronary occlusion or thrombosis is to be service _ connected. Mere identification of coronary heart disease upon routine examination early in service is not a basis for service connection.
A.R. 40-504, paragraph 39, reads as follows:
Par. 39. _ Arteriosclerosis. Arteriosclerosis without symptomatic focalization usually does not render an individual unfit.
Plaintiff’s service medical records, as stated earlier, show no more than early or mild hypertension, and clearly do not show evidence of clinical cardiovascular disease. As a matter of fact, the report of Captain Hale, supra, shows exactly the opposite; i.e., “no clinical cardiovascular disease.” Consequently, plaintiff has failed to show that the action of the Correction Board or the Army was contrary to statute, unsupported by the evidence, or was arbitrary or illegal.
Plaintiff’s motion for summary judgment is denied, and defendant’s cross-motion is granted. Plaintiff’s petition is dismissed.